## 37386, 37449. CALDWELL v. LIBERTY MUTUAL INSURANCE COMPANY et al.; and vice versa.

CLARKE, Justice.

This case deals with the rate setting procedures of the insurance commissioner's office relative to worker's compensation insurance premiums.

The issues before the court on appeal and cross-appeal are: (1) whether Liberty Mutual may seek relief from the superior court without exhausting its administrative remedies; (2) whether under the law as it existed in 1979 the commissioner must consider and rule upon the 1979 filing of the National Council of Compensation Insurance (NCCI); (3) whether in years subsequent to 1979 the commissioner may consider the filings of rating organization as advisory only.

The trial court first temporarily enjoined the commissioner from enforcing his 1979 directive requiring individual filings. The court subsequently granted a writ of mandamus directing that the commissioner consider the 1979 NCCI filing and directing that it be considered under the law as it existed at the time of the filing. The court further ordered that any future NCCI rulings be considered on an equal footing with the individual filings. We reverse in part and affirm in part.

Since 1920, worker's compensation insurers have been required to file requests for rate changes with the insurance commissioner for his approval. Code Ann. § 114-609. Under Code Ann. § 56-506 (g) as it existed prior to 1978 (Ga. L. 1967, pp. 684, 689), the filings required by Code Ann. § 114-609 could be made by a rating organization licensed in accordance with the insurance code. In 1978, the legislature amended Code Ann. § 56-506 (g) (Ga. L. 1978, p. 2073) to provide that rights conferred by this section are subject to the provisions of Code Ann. § 56-522.1. Code Ann. § 56-522.1 was enacted by the General Assembly in 1967 (Ga. L. 1967, pp. 684, 699). As originally written, Code Ann. § 56-522.1 required that every insurer maintain with the commissioner copies of rates, rating plans, rating systems, underwriting rules, policy or bond forms used by it. The section provided that the maintenance of such information with the commissioner by a licensed rating organization to which insurer belonged would be sufficient compliance with the statute. This code section was amended in 1978 (Ga. L. 1978, pp. 2073-74) to provide that the commissioner might require any insurer to file the required rates, rating plans, rating systems, underwriting rules, policy or bond forms used by it independent of any filing made on its behalf by a licensed rating organization. In 1980, the General Assembly again amended Code Ann. § 56-522.1 (Ga. L. 1980, pp. 1063, 1064) to read as follows: "Provided, however, the Commissioner may, without compliance with the rule-making procedures of this Code Title or the provisions of the 'Georgia Administrative Procedure Act,' approved March 10, 1964 (Ga. L. 1964, p. 338), as now or hereafter amended, require any domestic, foreign, and alien insurer to file the required rates, rating plans, rating systems, underwriting rules, policy or bond

forms used, or in the case of worker's compensation insurer used or filed for approval, by it, independent of any filing made on its behalf or as a member of licensed rating organization, as he shall deem to be necessary to insure compliance with the standards of Code Chapter 56-5 and Code Section 114-609 and in the best interest of the citizens of this State."

Pursuant to Code Ann. § 56-522.1, the commissioner on March 15, 1979, issued Directive Number 79-R-2 requiring individual filings based on each insurer's own loss, expense and investment experience. Subsequently, in August, 1979, the National Council on Compensation Insurance (NCCI), a rating organization, filed a rate filing for a group of workers' compensation insurers for rate changes based on a composite expense, investment and loss experience of these insurers. The commissioner took no action on this filing.

Liberty Mutual Insurance Company filed the present action seeking declaratory and injunctive relief from Directive Number 79-R-2. A number of other workers' compensation carriers intervened in the lawsuit. The Superior Court of Fulton County granted a temporary restraining order on March 24, 1980. The court temporarily enjoined enforcement of Directive Number 79-R-2 until withdrawn or rewritten. The court found that: (1) the commissioner had not complied with the requirements of Code Ann. § 56-217 (2) in its issuance of Directive Number 79-R-2; (2) Directive Number 79-R-2 went beyond the authority granted by Code Ann. § 56-522.1 to the extent that it rendered the 1979 NCCI filings merely advisory; (3) Liberty Mutual need not exhaust administrative remedies before bringing its action for declaratory judgment.

Subsequent to the court's order of March 24, 1980, the 1980 amendment to Code Ann. § 56-522.1 went into effect on March 25, 1980. This amendment expressly provided that the Georgia Administrative Procedure Act is inapplicable to the filing of rates by workers' compensation insurers and that the commissioner's authority applies to workers' compensation insurers rates that are filed for approval.

The commissioner promulgated a second directive, Directive Number 80-R-2 (April 30, 1980), requiring individual filings by insurers seeking a rate change. Liberty Mutual amended its complaint to seek mandamus, as well as declaratory and injunctive relief from this second directive.

Although both parties have filed numerous enumerations of error, we find that a resolution of the issues stated at the beginning of this opinion will decide the appeal and the cross-appeal.

1. The trial court held that Liberty Mutual was not bound to exhaust administrative remedies available under Code Ann. § 56-218

before proceeding with a suit in equity. Its ruling was based upon the fact that exhaustion of remedies would be time-consuming and the delay would cause considerable damage. We agree that the exhaustion is not required in this case, but for a different reason.

There are exceptions to the exhaustion requirement when the validity of a rule of an administrative agency is under attack. The validity of an agency's rule may be attacked directly or by an action for declaratory judgment whether or not the petitioner has exhausted his administrative remedies. Code Ann. § 3A-111. The question here is whether the requirements imposed by the commissioner's directives constituted a "rule." A "rule" is defined as "... each agency regulation, standard or statement of general applicability that implements, interprets or prescribes law or policy, or describes the organization, procedure or practice requirements of any agency." Code Ann. § 3A-102 (f). The definition goes on to expressly list certain agency actions as being outside the definition of rule. One of those actions which is listed as not being a rule is: "The approval or prescription for the future of rates and prices." Code Ann. § 3A-102 (f) (10).

The commissioner insists that this provision of the Code takes Directive Nos. 79-R-2 and 80-R-2 outside the definition of a "rule," and that there is, therefore, a requirement to exhaust administrative remedies. A review of the evolution of the code section leads us to conclude that this argument cannot be sustained. As originally enacted, § 3A-102 (f) specifically provided: "The term [rule] includes the rules of practice and procedure for the approval or prescription for the future of rates and prices . . . ." Ga. L. 1964, pp. 338, 341. In 1965, this section was amended to add approval or prescription for the future of rates or prices as being outside the definition of a "rule." Ga. L. 1965, pp. 283, 286. Conspicuously absent from this provision, however, is the phrase "the rules of practice and procedure for" which formerly preceded "approval or prescription for future of rates and prices." The inescapable conclusion from this deletion is that the legislature intended that approval or prescription for future of rates and prices should not fall within the definition of a "rule," but that rules of practice and procedure for such approval and prescription should fall within the definition. Therefore, since the two directives can only be characterized as rules of practice and procedure for the approval of or prescription for the future of rates, the directives are within APA definition of "rule." Consequently, a challenge of the two directives is permitted without the necessity for exhaustion of administrative remedies.

2. When NCCI filed for a rate change in 1979, the law allowed the commissioner to require any insurer to file certain information

independent of that filed by NCCI. However, the statute did not until 1980 relieve the commissioner of the necessity of complying with the rule-making procedures of the Administrative Procedure Act in order to institute such a requirement. The commissioner issued the rule requiring the individual filing of information but did not follow the rule-making requirements of the Administrative Procedure Act. The commissioner took the position that he need not consider the NCCI filing since Liberty Mutual failed to file the required information individually.

The trial court ruled that the commissioner must consider and rule upon the 1979 filing of NCCI and that this must be done under the law as it existed in 1979. We agree.

3. The commissioner is charged by Code Ann. § 114-609 and Code Ann. Ch. 56-5 to gather all information relevant to a decision on insurance rates and to use this information in his determination whether rates requested are fair, reasonable, and adequate. Since he is authorized by § 56-522.1 to require individual filings, and since he is charged under § 114-609 with the responsibility of assimilating all relevant information in his decision-making process, it must be assumed that he has discretion to give the greatest weight to the information which he considers most valuable. This includes the discretion to consider composite filings as advisory or as "benchmark" filings against individual filings.

We hold that the trial court properly ruled that the plaintiff need not exhaust administrative remedies, and that the trial court was correct in granting a writ of mandamus requiring the commissioner to consider the 1979 filings under the law as it existed in 1979. However, we hold the trial court erred in its ruling limiting the commissioner's discretion as to the comparative weight to be given the composite filings and the individual filings subsequent to 1979.

*Judgment affirmed in part and reversed in part. Jordan, C. J., Hill, P. J., Marshall and Gregory, JJ., concur. Smith, J., not participating.*

DECIDED OCTOBER 8, 1981.

*Arthur K. Bolton, Attorney General, Mark A. Dickerson, Assistant Attorney General,* for appellant.

*Gambrell & Mobley, David H. Gambrell, G. Stephen Parker, Robert D. Feagin,* for appellees.